312 Ga. 843
FINAL COPY

S20G1536.  SPANN v. DAVIS et al.

McMILLIAN, Justice.

Gai Spann filed suit against Rashida Davis and Kyra Dixon, administrators of the City of Atlanta Municipal Court ("the Clerks"), alleging that she was wrongfully arrested and detained as a result of the Clerks' failure to withdraw a failure-to-appear warrant after it had been cancelled by the municipal court. The Clerks raised sovereign immunity and official immunity as defenses in a motion to dismiss,[1] but the trial court instead sua sponte raised and granted the motion based on quasi-judicial immunity, with no prior notice to the parties. The Court of Appeals affirmed. See *Spann v. Davis*, 355 Ga. App. 673, 673-74 (845 SE2d 415) (2020). We granted certiorari in this case and posed the following questions:

> 1. Did the Court of Appeals err in concluding that the trial court was correct to rule sua sponte on the issue of quasi-judicial immunity, even though the defendants

---

[1] The Clerks also asserted that dismissal was warranted because Spann's ante litem notice failed to comply with statutory requirements.

did not raise quasi-judicial immunity in the motion to dismiss or the answer?

2. Did the Court of Appeals err in affirming the trial court's dismissal of the plaintiff's complaint against the defendants based on quasi-judicial immunity? See *Withers v. Schroeder*, 304 Ga. 394 (819 SE2d 49) (2018); *Hicks v. McGee*, 289 Ga. 573 (713 SE2d 841) (2011). See also *Antoine v. Byers & Anderson, Inc.*, 508 U.S. 429 (113 SCt 2167, 124 LE2d 391) (1993).[2]

Because we answer the first question in the affirmative, we conclude that it is not necessary to answer the second question. We therefore reverse Division 1 of the Court of Appeals' decision, vacate Division 2, and direct the Court of Appeals to remand the case to the trial court for further proceedings.

The Court of Appeals summarized the pertinent facts as follows:

Spann's complaint alleged that on August 7, 2017, a City of Atlanta police officer issued Spann a citation charging her with a traffic offense relating to an automobile accident. Spann was notified to appear in the municipal court on September 20, 2017. Spann failed to appear for the court date and thus, a failure-to-appear ("FTA") warrant for her arrest was issued on October 24, 2017. The FTA warrant was entered into the Georgia

---

[2] We are aided in answering these questions by amicus briefs filed by the Georgia Trial Lawyers Association and the Attorney General of Georgia.

Crime Information Center ("GCIC") database on the following day.

Thereafter, on November 9, 2017, Spann voluntarily appeared in the municipal court and entered a guilty plea to the traffic citation. The municipal court ordered Spann to pay a fine, which was deferred under a pretrial intervention plan. Spann further alleged that although the FTA warrant had been cancelled at the direction of the municipal court judge, the Clerks neglected to withdraw the FTA warrant from the GCIC system.

On January 26, 2018, Spann was stopped by police for another traffic violation. During the traffic stop, a GCIC check revealed that the FTA warrant was still active. Spann was arrested and detained in jail.

Spann claims that during her unlawful detention, she experienced humiliation, extreme anxiety[,] and emotional distress. She was subsequently released after payment of a cash bond and the fine that previously had been deferred.

Spann later filed the instant suit, claiming that the Clerks had breached their ministerial duties to remove, or to confirm the removal of, the cancelled FTA warrant from the GCIC system, which led to her false arrest. Spann's suit sought the recovery of consequential damages and attorney fees allegedly incurred as a result of the Clerks' negligence.

The Clerks filed a motion to dismiss the lawsuit under OCGA § 9-11-12 (b) (6) on the grounds that Spann's complaint was barred by her failure to comply with the statutory requirements for serving an ante litem notice and by operation of the doctrines of sovereign and official immunity. In its ruling, the trial court dismissed the lawsuit based on its finding that Spann's claims were barred by the doctrine of quasi-judicial immunity, rather than the alternative grounds raised by the Clerks' motion.

3

*Spann*, 355 Ga. App. at 673-74.

The Court of Appeals first concluded that the trial court properly raised the doctrine of quasi-judicial immunity[3] sua sponte, explaining that "'a trial court has the authority to dismiss claims sua sponte if it can determine from the pleadings that the claims cannot succeed as a matter of law.'" *Spann*, 355 Ga. App. at 674 (1) (quoting *Roberts v. DuPont Pine Productions, LLC*, 352 Ga. App. 659, 661 (2) (835 SE2d 661) (2019)). Then, turning to the merits, the court held that the Clerks were entitled to quasi-judicial immunity, relying on *Withers*, in which this Court held that an appellant's claims against a court administrator for not reporting the disposition of a traffic case were barred based on quasi-judicial immunity. See *Spann*, 355 Ga. App. at 675 (2). The Court of Appeals

---

[3] "Judicial immunity shields judicial officers from liability in civil actions based on acts performed in their judicial capacity that are not undertaken in the complete absence of all jurisdiction. This broad immunity, normally applied to judges, also applies to officers appointed by the court if their role is simply 'an extension of the court.'" *Considine v. Murphy*, 297 Ga. 164, 169 (3) n.4 (773 SE2d 176) (2015) (citations omitted). Where this immunity is extended to such appointees, we have referred to it as "quasi-judicial immunity." See *Withers*, 304 Ga. at 399 (3).

4

reasoned that the Clerks' failure to report the cancellation of the FTA warrant was a judicial, not ministerial, function because an FTA warrant is issued by a judge. See id. at 676 (2). The court also relied on language in *Withers*, in which we explained that the act of reporting the disposition of a pending matter to an interested government agency is judicial in nature (even if performed by a clerk at the direction of a judge rather than by a judge).[4] See id. The Court of Appeals, thus, concluded that the cancellation of an FTA warrant is an extension of the judicial function that authorizes quasi-judicial immunity. See id. at 676-77 (2).

1. Spann first asserts that the trial court erred in ruling sua sponte on the issue of quasi-judicial immunity. We agree.

We start our analysis by setting out some first principles. A complaint in a civil action generally must contain "[a] short and plain statement of the claims showing that the pleader is entitled to

---

[4] Specifically, in *Withers*, we broadly stated that "[c]ourts have held that the act of reporting the disposition of a matter pending before a court to an interested government agency is a function that is judicial in nature and inherent to the judicial process." 304 Ga. at 398-99 (4).

5

relief[,]" OCGA § 9-11-8 (a) (2) (A), and claims in the complaint may

be dismissed for failure to state a claim if:

> (1) the allegations of the complaint disclose with certainty that the claimant would not be entitled to relief under any state of provable facts asserted in support thereof; and (2) the movant establishes that the claimant could not possibly introduce evidence within the framework of the complaint sufficient to warrant a grant of the relief sought.

*Anderson v. Flake*, 267 Ga. 498, 501 (2) (480 SE2d 10) (1997). See

also OCGA § 9-11-12 (b) (6) (defense of failure to state a claim upon

which relief can be granted may, at the option of the pleader, be

made by motion).

A corollary to these concepts is that, although the complaint

need not anticipate affirmative defenses, if the allegations on the

face of the pleadings support the defense as a matter of law and show

that the claimant would not be entitled to relief, the trial court is

authorized to dismiss for failure to state a claim. See *Murrey v.*

*Specialty Underwriters, Inc.*, 233 Ga. 804, 807-08 (213 SE2d 668)

(1975) ("However, it has been held that some affirmative defenses

may properly be raised by a motion to dismiss if the facts are

admitted or are not controverted or are completely disclosed on the face of the pleadings and nothing further can be developed by a trial of the issue."). See also *Speedway Motorsports, Inc. v. Pinnacle Bank*, 315 Ga. App. 320, 323 (1) (727 SE2d 151) (2012) ("Consequently, if the facts alleged in the complaint affirmatively prove a defense, a court may dismiss the complaint based upon the defense . . . .").

Although, in the ordinary case, a motion to dismiss for failure to state a claim is raised by a party with notice and opportunity by the opposing party to respond, we have recognized that a trial court has the authority to sua sponte dismiss a claim on grounds not raised in the motion before it if it can determine from the pleadings that no claim has been stated as a matter of law. See *Love v. Fulton County Bd. of Tax Assessors*, 311 Ga. 682, 690 (2) (859 SE2d 33) (2021). See also *Perry Golf Course Dev., LLC v. Housing Auth. of the City of Atlanta*, 294 Ga. App. 387, 392-93 (6) (670 SE2d 171) (2008) ("But a trial court has the authority to dismiss claims sua sponte and without a hearing if it can determine from the pleadings that the claims cannot succeed as a matter of law."). The Court of Appeals

7

has extended this concept to sua sponte dismissals based on affirmative defenses that are asserted in the answer when the allegations in the complaint support the defenses.[5] See *Roberts*, 352 Ga. App. at 661 (2) (in considering motion for summary judgment, trial court had authority to sua sponte dismiss claims based on affirmative defenses asserted in the answer, but reversing because the allegations did not support the defenses).

Moreover, although this Court appears not to have considered the issue, the Court of Appeals has squarely held that a "trial court lacks authority to assert on behalf of a party affirmative defenses that can be waived." *Focus Healthcare Med. Center, Inc. v. O'Neal*, 253 Ga. App. 298, 299 (a) (558 SE2d 818) (2002). See also *YP, LLC v. Ristich*, 341 Ga. App. 381, 382 (1) (801 SE2d 80) (2017)

---

[5] Although one of the defenses that the *Roberts* court addressed sua sponte was that the complaint failed to state a claim upon which relief can be granted, the court did not consider or explain why the authority of a trial court to sua sponte dismiss for failure to state a claim extends to dismissing claims based on the asserted affirmative defenses of lack of privity of contract and failure to include necessary and indispensable parties. See *Roberts*, 352 Ga. App. at 662-63 (2). We express doubt about whether a trial court can sua sponte dismiss on the basis of affirmative defenses other than failure to state a claim, but do not find it necessary to definitively answer the question today.

("Accordingly, because Ristich did not raise an affirmative defense to jurisdiction, the trial court lacked authority to assert it on his behalf by sua sponte dismissing the complaint for lack of personal jurisdiction under the Long Arm Statute."); *Nacoochee Corp. v. Suwanee Investment Partners, LLC*, 275 Ga. App. 444, 447 (2) (620 SE2d 641) (2005) (trial court's consideration of an affirmative defense not raised by the defendant was error).

Here, the Court of Appeals did not recognize this precedent when it concluded that the trial court had the authority to sua sponte raise the immunity defense and dismiss Spann's claims on that basis without giving Spann notice and an opportunity to be heard. See *White v. State*, 305 Ga. 111, 121 (3) (823 SE2d 794) (2019) (Court of Appeals is bound by older precedent from that court "until such time as the older law [is] properly overruled by that court or reversed or overruled by this Court."). This sua sponte dismissal based on an affirmative defense that has not been raised is particularly problematic because, as is generally the case for those asserting an affirmative defense, a party seeking protection from

suit on the basis of immunity bears the burden of establishing that he or she is entitled to that protection. See, e.g., *Hill v. Jackson*, 336 Ga. App. 679, 684 (1) (a) (783 SE2d 719) (2016) (party moving for summary judgment on basis of qualified immunity bears burden of proof on the asserted immunity). And the defense of judicial immunity or quasi-judicial immunity is a fact-specific inquiry that turns on the nature and function of the actions taken by the party asserting the defense, rather than that party's status. See *Withers*, 304 Ga. at 397-98 (2) (judicial immunity is defined by the nature and function of the act at issue, not by the person to whom it attaches). Moreover, limiting the dismissal of a claim to an affirmative defense that is actually raised and argued by the parties recognizes the autonomy of the defendant who may choose to take advantage of the defense or forgo asserting it. See *Focus Healthcare*, 253 Ga. App. at 299 (a).

Because the Clerks did not assert quasi-judicial immunity in their responsive pleading, such that the allegations of the pleadings do not reveal on their face that they are entitled to immunity as a

matter of law, and the Clerks did not otherwise move to dismiss on that basis, the trial court erred in sua sponte dismissing Spann's claims, and the Court of Appeals erred in Division 1 of its opinion, which we reverse.

2. However, that does not end our inquiry because Spann asserts that the Clerks have waived the defense of quasi-judicial immunity by failing to raise it in their initial pleading or by motion.[6]

OCGA § 9-11-12 (b) provides in relevant part:

> Every defense, in law or fact, to a claim for relief in any pleading, whether a claim, counterclaim, cross-claim, or third-party claim, shall be asserted in the responsive pleading thereto if one is required, except that the following defenses may, at the option of the pleader, be made by motion in writing:
> (1) Lack of jurisdiction over the subject matter;
> (2) Lack of jurisdiction over the person;
> (3) Improper venue;
> (4) Insufficiency of process;
> (5) Insufficiency of service of process;
> (6) Failure to state a claim upon which relief can be granted;
> (7) Failure to join a party under Code Section 9-11-19.
> A motion making any of these defenses shall be made

---

[6] Because this issue is likely to recur on remand, we address it here. See *Seabolt v. Norris*, 298 Ga. 583, 587 (3) n.2 (783 SE2d 913) (2016); *Baldwin v. Vineyard*, 275 Ga. 134, 135 (2) (562 SE2d 174) (2002).

11

before or at the time of pleading if a further pleading is permitted. No defense or objection is waived by being joined with one or more other defenses or objections in a responsive pleading or motion. . . .

See also OCGA § 9-11-8 (b) ("A party shall state in short and plain terms his defenses to each claim asserted and shall admit or deny the averments upon which the adverse party relies."); OCGA § 9-11-8 (c) ("In pleading to a preceding pleading, a party shall set forth affirmatively accord and satisfaction, arbitration and award, discharge in bankruptcy, duress, estoppel, failure of consideration, fraud, illegality, injury by fellow servant, laches, license, payment, release, res judicata, statute of frauds, statute of limitations, and waiver.").[7]

Of its seven enumerated defenses, OCGA § 9-11-12 (h) (1) specifies that four — lack of jurisdiction over the person, improper venue, insufficiency of process, and insufficiency of service of process

---

[7] Unlike OCGA § 9-11-8 (c), the Federal Rules of Civil Procedure include a catch-all introductory provision that covers all possible affirmative defenses. See Fed. R. Civ. P. 8 (c) (1) ("In responding to a pleading, a party must affirmatively state any avoidance or affirmative defense, including: . . . .").

— may be waived under three circumstances: (1) if omitted from a responsive pleading as originally filed,[8] (2) if not asserted in a motion filed at or before the time of pleading, or (3) if omitted from a motion in the circumstances as described in OCGA § 9-11-12 (g). As to whether such defenses are waived, subsection (g) provides that "[i]f a party makes a motion under this Code section but omits therefrom any defense or objection then available to him which this Code section permits to be raised by motion, he shall not thereafter make a motion based on the defense or objection so omitted," except for a motion on the grounds stated in OCGA § 9-11-12 (h) (2). Paragraph (h) (2) in turn permits the defense of failure to state a claim upon which relief can be granted, the defense of failure to join an indispensable party, and an objection of failure to state a legal

---

[8] The qualifier that these defenses may be waived if omitted from a responsive pleading "as originally filed" is significant because generally "[a] party may amend his pleading as a matter of course and without leave of court at any time before the entry of a pretrial order." OCGA § 9-11-15 (a). See also *Harvey v. Merchan*, 311 Ga. 811, 818-19 (2) (b) (i) (860 SE2d 561) (2021) (where no pretrial order had been entered, plaintiff was free to amend her pleadings to give notice of intention to rely on foreign law); *Camp v. Coweta County*, 280 Ga. 199, 203 (3) (625 SE2d 759) (2006) ("[T]he general rule, applicable to civil actions in the absence of specific statutory authority, is that amendments are generally allowed prior to the entry of a pretrial order.").

defense to a claim to be made in any pleading permitted or ordered under OCGA § 9-11-7 (a) or by motion for judgment on the pleadings, or at the trial on the merits.

Here, the Clerks did not assert the defense of quasi-judicial immunity in their responsive pleading or by motion. Although OCGA §§ 9-11-8 and 9-11-12 generally require defenses to be asserted in a responsive pleading, quasi-judicial immunity is not one of those defenses enumerated in OCGA § 9-11-12 (h) (1) as being waived if not included in a responsive pleading as originally filed. See *Turner v. Ga. River Network*, 297 Ga. 306, 308 (773 SE2d 706) (2015) (one of our "longstanding tenets of statutory construction [is] 'expressio unius est exclusio alterius (expression of one thing implies exclusion of another)'" (citation omitted)). See also *Gerschick & Assoc., P.C. v. Pounds*, 266 Ga. App. 852, 855 (1) (a) (598 SE2d 522) (2004) ("OCGA § 9-11-8 (c) does not imply, however, that an affirmative defense can be raised only by answer or it is forever waived."). Moreover, quasi-judicial immunity is not among the seven defenses "which this Code section permits to be raised by motion,"

14

rather than in a responsive pleading, OCGA § 9-11-12 (g); therefore, the Clerks' failure to include quasi-judicial immunity in their motion does not amount to a waiver of that defense.

We recognize that we have broadly stated that an "immunity" defense can be raised in a motion to dismiss for lack of subject matter jurisdiction[9] under OCGA § 9-11-12 (b) (1) without specifying the type of immunity, which could suggest another reason why the Clerks have not waived the defense of quasi-judicial immunity.[10] However, although we have held that Georgia courts have no subject matter jurisdiction when sovereign immunity applies,[11] we have

---

[9] Subject matter jurisdiction refers to the authority of a court to hear a specific claim, and when a court "lacks subject matter jurisdiction to decide a question, it has no power to enter a judgment on the merits." *First Christ Holiness Church, Inc. v. Owens Temple First Christ Holiness Church, Inc.*, 282 Ga. 883, 885 (655 SE2d 605) (2008).

[10] See *Rivera v. Washington*, 298 Ga. 770, 778 (784 SE2d 775) (2016) ("Moreover, a defendant asserting an immunity defense may move to dismiss for lack of subject matter jurisdiction under OCGA § 9-11-12 (b) (1), on consideration of which, the trial court may hear evidence and make relevant factual findings to decide the threshold issue." (citations omitted)).

[11] In doing so, we have explained that, because sovereign immunity is jurisdictional, it requires the *plaintiff* to prove any waiver thereto and is properly raised under OCGA § 9-11-12 (b) (1). See *Ga. Dept. of Labor v. RTT Assoc., Inc.*, 299 Ga. 78, 81 (1) (786 SE2d 840) (2016) ("The burden of demonstrating a waiver of sovereign immunity rests upon the party asserting it." (citations omitted)); *Ga. Dept. of Transp. v. Dupree*, 256 Ga. App. 668, 671

15

never held that judicial or quasi-judicial immunity raises the issue of a court's subject matter jurisdiction. And because a trial court retains authority over a case whether judicial or quasi-judicial immunity applies, we take this opportunity to make clear that the assertion of this type of immunity is an affirmative defense and not an issue that would divest the court of subject matter jurisdiction. See, e.g., *Mordkofsky v. Calabresi*, 159 F. App'x. 938, 939 (11th Cir. 2005) ("[J]udicial immunity is an affirmative defense and does not divest the court of subject matter jurisdiction."); *Caban-Wheeler v. Elsea*, 71 F3d 837, 842 (II) (A) (v) (11th Cir. 1996) (because the

(1) (570 SE2d 1) (2002) ("Under OCGA § 9-11-12 (b) (1), a defendant can raise a plea in abatement, which is not an adjudication on the merits, that raises the issue of the lack of subject matter jurisdiction in the trial court . . . ."), overruled in part on other grounds, *Ga. Dept. of Transp. v. Thompson*, 354 Ga. App. 200, 207 (1) n.6 (840 SE2d 679) (2020). In addition, it is well settled that a lack of subject matter jurisdiction can be raised at any time and cannot be waived. See *Abushmais v. Erby*, 282 Ga. 619, 622 (3) (652 SE2d 549) (2007) (A "court's lack of subject-matter jurisdiction cannot be waived and may be raised at any time either in the trial court, in a collateral attack on a judgment, or in an appeal." (citation and punctuation omitted)); OCGA § 9-11-12 (h) (3) ("Whenever it appears, by suggestion of the parties or otherwise, that the court lacks jurisdiction of the subject matter, the court shall dismiss the action."). Cf. *Idaho v. Coeur d'Alene Tribe*, 521 U.S. 261, 267 (II) (A) (117 SCt 2028, 138 LE2d 438) (1997) (Eleventh Amendment sovereign immunity is not "a nonwaivable limit on the federal judiciary's subject-matter jurisdiction.").

defense of judicial immunity was not raised at any time before or during trial, the issue was waived).[12]

3. In light of our holding in Division 1, we conclude that it is not necessary to consider whether the Court of Appeals erred in affirming the trial court's dismissal on the basis of quasi-judicial immunity, and indeed no court should decide that issue unless and until it is properly raised. See *Mathenia v. Brumbelow*, 308 Ga. 714, 726 (4) (843 SE2d 582) (2020); *State v. Hudson*, 303 Ga. 348, 350 (2) (812 SE2d 270) (2018). See also *Considine v. Murphy*, 297 Ga. 164, 170 (3) (773 SE2d 176) (2015). We therefore vacate Division 2 of the Court of Appeals' decision.

*Judgment reversed in part and vacated in part, and case remanded with direction. All the Justices concur.*

---

[12] Although not binding on this Court, we conclude that these federal appellate decisions are well reasoned and persuasive.

McMILLIAN, Justice, concurring.

I concur fully in the Court's opinion, including Division 3, in which the Court concludes that it is unnecessary to answer the question of whether the Clerks are entitled to quasi-judicial immunity when that affirmative defense has not been asserted in the trial court. However, I write separately to explain why I believe that *Withers v. Schroeder*, 304 Ga. 394 (819 SE2d 49) (2018), is distinguishable from the case at hand and to further note my concerns with some of the reasoning in *Withers*, which has apparently led the lower courts astray.

I begin by emphasizing that I agree with much of the initial reasoning employed in *Withers* as to the scope of judicial and quasi-judicial immunity, namely: (1) judicial immunity protects judges from being sued and from being held civilly liable "as a result of carrying out their judicial duties"; (2) "a judge will be denied the absolute protection of judicial immunity [when] committing an act that is nonjudicial in nature; or . . . acting in the 'complete absence of all jurisdiction'"; and (3) the "determinative issue . . . is whether

the core function complained of . . . was nonjudicial." *Withers*, 304 Ga. at 396-97 (2) (citation omitted). "The relevant inquiry is the nature and function of the act, not the act itself. In other words, we look to the particular act's relation to a general function normally performed by a judge." Id. at 397-98 (2) (cleaned up).

In *Withers*, we held that the act of reporting the failure to appear for a traffic citation was a duty imposed on judges in large part because at that time OCGA § 17-6-11 (b) provided that "[t]he court in which the charges are lodged shall immediately forward to [the Department of Driver Services ('DDS')] . . . the driver's license number if the person fails to appear and answer to the charge against him or her." *Withers*, 304 Ga. at 398 (2) (punctuation omitted). And then we reasoned that, because the court administrator performed that task on behalf of the court, the court administrator was protected by quasi-judicial immunity. See id. at 399 (3). We further noted that this statute was substantially amended in 2017 such that it "now provides that the 'clerk of court' rather than the 'court'" is responsible for making reports to DDS. Id.

19

at 398 (2) n.5.

Here, there is no similar statute imposing a duty on the court to report to the Georgia Crime Information Center that the FTA warrant had been cancelled. Thus, in my view, even if the Clerks were to assert quasi-judicial immunity on remand, *Withers* would be distinguishable and would not control the question. Instead, this case would appear to be more like *Hicks v. McGee*, 289 Ga. 573 (713 SE2d 841) (2011).

However, I also take this opportunity to express that I believe that we went astray in *Withers* when we looked to the statute as essentially dispositive to determine the judicial function, instead of just a factor in the analysis. See id. at 398 (2). Moreover, we then, in my view, erroneously extended the concept that a statute can define a judicial function to state broadly that reporting the disposition of a matter to another government agency is a judicial function generally (even apparently in the absence of a statute): "[c]ourts have held that the act of reporting the disposition of a matter pending before a court to an interested government agency is a

function that is judicial in nature and inherent to the judicial process." Id. at 398-99 (2) (citing *Herring v. Gorbey*, 2017 WL 5885668 (C) (3) at *9-10 (E.D. Pa. Nov. 27, 2017) and *In re McKenzie*, 472 BR 455, 466 (IV) (Bankr. E.D. Tenn. 2012)). We similarly observed that "the act of preparing a report at the direction of the judge to aid in the judicial process is a function that is judicial in nature and may be protected by judicial immunity even if a judicial officer, rather than a judge, actually prepares the report." Id. at 399 (2) (citing *Dellenbach v. Letsinger*, 889 F2d 755 (II) (B) (1) (b) (7th Cir. 1989), and *Hughes v. Chesser*, 731 F2d 1489, 1490 (11th Cir. 1984)).[13]

However, none of the federal cases cited addressed the issue of a judicial function versus a clerk's function. And it does not appear that in any of those cases was there a statute imposing the reporting requirement to a government agency on the court. I recognize the

---

[13] The Court of Appeals relied on this broad language to conclude that the Clerks functioned as an extension of the court when they reported the disposition of the traffic case to GCIC, such that Spann's claims were barred by the doctrine of quasi-judicial immunity. See *Spann v. Davis*, 355 Ga. App. 673, 676-77 (2) (845 SE2d 415) (2020).

21

difficulty, though, that lower courts sometimes have in declining to follow language in this Court's decisions, even when that reasoning appears erroneous, as well as the incentive to faithfully apply all of the language in our opinions because of the desire to render correct rulings and the fear of being reversed otherwise.[14] Thus, I write separately to flag this issue with respect to judicial and quasi-judicial immunity, which comes up relatively infrequently, and to urge the Court to reconsider *Withers* when the opportunity to do so is properly presented.

I am authorized to state that Justice Peterson and Justice LaGrua join this concurrence.

---

[14] I previously served in the State Court and on the Court of Appeals.

Decided November 23, 2021.

Certiorari to the Court of Appeals of Georgia — 355 Ga. App. 673.

*Kurt G. Kastorf; Cary S. Wiggins*, for appellant.

*Kimberly Briana-Maria Myers, Joshua S. Foster, Kimberly M. Perkins*, for appellees.

*Hasty Pope Davies, Jonathan A. Pope; Shamp Jordan Woodward, Laura M. Shamp, Joshua F. Silk*, amici curiae (appellant).

*Christopher M. Carr, Attorney General, Zachariah W. Lindsey, Drew F. Waldbeser, Assistant Attorneys General*, amici curiae (neutral).